UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL MARTIN,

        Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 3:15-cv-131

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR AN IMMEDIATE AWARD OF BENEFITS; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal.  At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2]  This case is before the Court upon Plaintiff's Statement of Errors (doc. 7), the Commissioner's memorandum in opposition (doc. 10), the administrative record (doc. 6),[3] and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively."  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

## A.    Procedural History

Plaintiff filed for DIB and SSI alleging a disability onset date of March 31, 2011.  PageID 307-17.  Plaintiff claims disability as a result of a number of alleged impairments including, *inter alia*, degenerative disc disease of the cervical and lumbar spine and degenerative joint disease of the right shoulder.  PageID 36.

After initial denials of his applications, Plaintiff received hearings before ALJ Joseph P. Donovan, Sr. on March 8, 2013 and August 29, 2013.  PageID 58-91, 92-122.  The ALJ issued a written decision on November 22, 2013 finding Plaintiff not disabled.  PageID 34-51.  Specifically, the ALJ's findings were as follows:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.    The claimant has not engaged in substantial gainful activity since March 31, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: status post lumbar fusion surgery (in 2006), degenerative disc disease of the cervical and lumbar spine, and degenerative joint disease of the right shoulder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medical equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity ["RFC"][4] to perform light work[4] as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant is

---

[4] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements.  20 C.F.R. § 404.1567.  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. § 404.1567(b).

further limited to sitting for up to six hours out of an eight-hour workday; standing for up to two hours out of an eight-hour workday; provision of an accommodation allowing the claimant to alternate between sitting and standing (a "sit/stand option"); no more than frequent use of hand/arm controls or foot/leg controls; unlimited feeling, fingering, or handling objects; no more than frequent reaching (including overhead reaching to ear level) with the right upper extremity (unlimited reaching of all kinds with the left upper extremity); no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of stairs or ramps; no more than frequent balancing; no more than occasional stooping, kneeling, crouching, crawling, or bending; and no exposure to industrial vibrations or hazards (such as unprotected heights or dangerous moving machinery).The claimant's work must be limited to simple, repetitive unskilled tasks involving no more than frequent interactions with coworkers, supervisors, and the public, no more than frequent changes in the work setting, and affording an off-task and productivity-reduction allowance of up to two percent of the workday.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born [in] 1971 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 36-50.

3

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 23-25. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007).

**B.     Evidence of Record**

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 37-49. Plaintiff, in his Statement of Errors, also sets forth an extensive summary of the record evidence. Doc. 7 at PageID 863-71. The Commissioner, in response to the Statement of Errors, defers to the ALJ's recitation of the evidence and incorporates relevant facts into the arguments presented. Doc. 10 at PageID 906. Except as otherwise noted herein, the undersigned incorporates the summary of evidence as set forth by the ALJ and Plaintiff.

## II.

**A.     Standard of Review**

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff

disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B.    "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act.  42 U.S.C. § 423(d)(1)(A).  Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations.  20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1.    Has the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's RFC, can he or she perform his or her past relevant work?

5.    Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001).  A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition.  *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

Plaintiff argues that the ALJ erred in: (1) assigning no weight to the consistent opinions of treating physicians Robert Thaler, M.D. and Sung K. Min, M.D. and, instead, relying on the opinions of record reviewers Jerry McCloud, M.D. and Gary Hinzman, M.D.; and (2) assessing his credibility.  Doc. 8 at PageID 872, 877.  Finding reversible error in failing to appropriately evaluate medical source opinions, the undersigned does not reach Plaintiff's second alleged error regarding the assessment of his credibility.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]"  *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013).   In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers.  *Id.*

A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record."  *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013).  Treaters are entitled to greater deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and

6

may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]"  20 C.F.R. § 404.1527(c)(2).  Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).[5]  After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once."  *Snell*, 2013 WL 372032, at *9.  Record reviewers are afforded the least deference.  These "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions."  *Id*.  "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker."  *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).  Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 404.1527(c).  *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

## A. Treaters

Here, in weighing the opinions of treaters Thaler and Min, the ALJ did not mention the concept of controlling weight and never specifically declined to afford their opinions controlling

---

[5] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps."  *Cadle v. Comm'r of Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013).  Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and  "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 416.927.  *Id*.

weight.  *See Wilson*, 378 F.3d at 544 (stating that the regulations are designed to "ensure[] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule"); PageID 46-47.  Such failure is error where the Court cannot determine whether the ALJ undertook the "two-step inquiry" required when weighing treating source opinions.  *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-78 (6th Cir. 2013); *Chrismon v. Colvin*, 531 F. App'x 893, 900 (10th Cir. 2013).  Such an oversight by the ALJ can constitute harmless error when, "despite [the ALJ's] failure to comply with the terms of 20 C.F.R. § 404.1527(c)(2), [the ALJ] has otherwise met the regulation's goal."  *Gayheart* at 380.  Here, even assuming the ALJ otherwise undertook a controlling weight analysis, the reasons given in declining to afford them controlling weight -- and in otherwise rejecting these opinions in total -- are unsupported by substantial evidence.

### 1.    Dr. Thaler

Dr. Thaler began treating Plaintiff in 2008, during which time imaging revealed -- among other findings -- herniated discs in Plaintiff's lumbar/sacral spine.  PageID 491, 579-80, 690.  Dr. Thaler also provided treatment for Plaintiff's mental impairments, such as Plaintiff's depression. While treating with Dr. Thaler, Plaintiff underwent spinal surgery -- an L5-S1 fusion -- in June 2008.  PageID 483-84.  Even following surgery, Plaintiff continued to complain of back pain. *See e.g.*, PageID 545.  In fact, an MRI in December 2011 revealed "mild disc diffuse bulge" at L3/4, L4/5, and L5/S1, although the impression noted was "[m]inimal degenerative disease." PageID 853.  That MRI also noted "minimal degenerative disease of the cervical spine."  PageID 852.

During his treatment of Plaintiff, Dr. Thaler also noted Plaintiff's complaints of pain in his right shoulder.  Imaging exams performed upon his referral revealed, for example,

8

hypertrophic changes, AC joint changes, and tendinopathy in February 2010.  *See* PageID 494.
Plaintiff underwent arthroscopic repair of his right rotator cuff in March 2010.  PageID 624.
Plaintiff subsequently reinjured his shoulder and imaging studies in August 2010 revealed
tendonitis of the rotator cuff tendon.  PageID 557.

In August 2011, Dr. Thaler opined that Plaintiff was "not able to perform sustained
work" and was limited to sitting 30 minutes at a time and standing 15 minutes at a time.  PageID
467-68.  Dr. Thaler also concluded that Plaintiff could perform no bending or stooping, and had
a decreased ability to lift and grasp.  *Id.*  The ALJ gave "no weight" to Dr. Thaler's August 2011
assessment on the basis that the limitations opined were inconsistent with his own records, such
as musculoskeletal examinations that "routinely showed normal range of motion" in the spine
and shoulder.  PageID 46.

In April 2012, Dr. Thaler provided another assessment.  PageID 737-40.  In this
assessment, Dr. Thaler opined that Plaintiff could sit, stand, or walk for only 1 hour per workday;
was required to stand up and move around every 20 minutes; could occasionally lift and carry up
to ten pounds; and was "markedly"[6] limited in his ability to perform tasks with his hands and
arms.  PageID 737-40.  In addition to physical limitations, Dr. Thaler also noted that "emotional
factors" such as stress, anxiety, and depression "contribute to the severity of [Plaintiff's]
symptoms and functional limitations[,]" and that Plaintiff was incapable of even low stress jobs;
would require a 10-15 minute break every 20 minutes; and would be absent from work more than
three times per month.  PageID 740-41.

---

[6] Whereas "mild" and "moderate" functional limitations are generally considered "non-
disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), "marked" limitations
are suggestive of disability.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *Lankford v. Sullivan*, 942
F.2d 301, 307 (6th Cir. 1991).

Dr. Thaler offered a similar -- if not identical -- assessment in February 2013, after noting that he had "been treating [Plaintiff] since 2008, for herniated lumbar discs, bilateral lumbar radiculopathy, neck pain, right shoulder pain, and decreased range of motion status-post rotator cuff repair, depression, and insomnia."[7] PageID 744-45.  In offering these disabling assessments in April 2012 and February 2013, Dr. Thaler relied significantly upon the December 2011 MRI. PageID 737-40, 744-45.  The ALJ gave these assessments "no weight," finding that Dr. Thaler's "assessment of herniated lumbar discs [was] not supported by the most recent MRI[,]" and noting that the December 2011 MRI showed only minimal degenerative changes.  PageID 46.

The undersigned finds the reasons advanced by the ALJ in rejecting Dr. Thaler's opinion are unsupported by substantial evidence.  First, in rejecting Dr. Thaler's August 2011 assessment, the ALJ commented that his musculoskeletal examinations "routinely showed normal range of motion" in the spine and shoulder.  PageID 46.  In this regard, the ALJ cites one isolated treatment record.  PageID 46.  A careful review of the evidence reveals that the record cited by the ALJ predates Plaintiff's alleged onset date.  PageID 536; *see Melius v. Colvin*, No. CV 15-10820, 2016 WL 633953, at *4 (E.D. Mich. Feb. 9, 2016), *report and recommendation adopted sub nom. Melius v. Comm'r of Soc. Sec.*, No. 15-CV-10820, 2016 WL 1104467 (E.D. Mich. Mar. 22, 2016) (noting the limited relevance of records that predate an alleged onset date). Further, the ALJ's statement, while acknowledging the existence of records that document a reduced range of motion, fails to explain why such clinical findings do not support Dr. Thaler's opinion.  Absent a meaningful explanation in this regard, substantial evidence does not support the ALJ's conclusion.

---

[7] The ALJ incorrectly references this opinion as having been offered in February 2012.  PageID 46, 744-45.

Further, in rejecting Dr. Thaler's February 2013 assessment, the ALJ gave such opinion no weight because -- among other reasons -- "[t]he assessment of herniated lumbar discs is not supported by the most recent MRI[.]"  PageID 46.  Notably, there is no dispute that Plaintiff did suffer from disc herniation in his lumbar spine in 2008 -- a condition for which Plaintiff treated with Dr. Thaler and subsequently underwent surgery to correct.  *See* doc. 10 at PageID 907.  Dr. Thaler, in his February 2013 letter, states only that he had "been treating [Plaintiff] since 2008," for a number of conditions, including "for herniated lumbar discs."  *Id*.  In other words, Dr. Thaler's statement, on its face, is true because he did treat Plaintiff for herniated discs during his treatment relationship with him.

Insofar as the ALJ rejected Dr. Thaler's opinion simply because degenerative changes noted in Plaintiff's cervical and lumbar spine in December 2011 were "minimal," the undersigned notes that "[t]he only way the ALJ could conclude that such objective evidence undermines [Dr. Thaler's opinion] was for him to interpret this raw medical data himself -- a task [he is] not entitled to perform."  *Moody v. Comm'r of Soc. Sec.*, No. 14-CV-224, 2016 WL 1729579, at \*5 (S.D. Ohio Feb. 5, 2016) (citing *Mabra v. Comm'r of Soc. Sec.*, No. 2:11-cv-00407, 2012 WL 3600127, at \*3 (S.D. Ohio Aug. 21, 2012)).  Notably, the record reviewers did not review the findings of this MRI in rendering their opinions.  *See* PageID 130, 140, 154, 168.[8]

---

[8] Record Reviewers McCloud and Hinzman provided opinions regarding Plaintiff's physical RFC in September 2011 and December 2011, respectively.  PageID 130, 140, 154, 168.  Notably, the opinions of these record reviewers was not based upon a review of the entire record and, significantly, did not involve consideration of a December 13, 2011 MRI that revealed degenerative changes in Plaintiff's cervical and lumbar spine.  *See* PageID 852-53.  These opinions were also given without consideration of the most recent disabling opinions of treaters Thaler and Min.  *See* PageID 737-40, 744-45, 767-73.  Even overlooking the fact that these record reviewers did not review the complete evidentiary record in giving their opinions, the ALJ's analysis of their opinions fails to satisfy the "meaningful explanation" requirement.  In fact, the analysis provided by the ALJ includes a mere summary of the opinions provided and the assessment that such doctors have "expertise in disability evaluation" and that "[t]heir rationales are clearly well-supported by the medical evidence."  PageID 48.

"[T]he Court cannot ignore that the ALJ offered [his] own lay interpretation of the medical evidence in the face of more severe opinions from Plaintiff's treating physician." *Mabra*, 2012 WL 3600127, at *3.

The ALJ also sought to minimize the findings of the December 2011 MRI by noting that Plaintiff's "course of treatment had stabilized and . . . required only semi-annual visits." PageID 46-47.  The problem with the ALJ's analysis in this regard, however, is the fact that the treatment record noting Plaintiff's stabilized "course of treatment" was from February 7, 2011 -- *i.e.*, almost a year before the imaging study.  PageID 537.

Additionally, the undersigned finds error insofar as the ALJ rejected Dr. Thaler's assessments on the suspicion that such opinions were given "in an effort to assist" Plaintiff based upon either bias or sympathy.  PageID 47.  In fact, this Court has found that such "supposition by the ALJ . . . is not a 'good reason' for discounting a treating physician's opinion where the possibility of bias is not supported by any specific evidence in the record." *Price v. Comm'r of Soc. Sec.*, No. 3:13-CV-394, 2015 WL 93644, at *5 (S.D. Ohio Jan. 7, 2015), *report and recommendation adopted*, No. 3:13CV394, 2015 WL 1402587 (S.D. Ohio Mar. 25, 2015) (citing *Hall v. Astrue*, No. 7:07-cv–590, 2008 WL 5455720, at *4 (W.D. Va. Dec. 31, 2008) (stating that "[t]here is simply no basis for an ALJ to reject a treating physician's opinion based on unsupported conjecture of bias"); *Hawkins v. Comm'r of Soc. Sec.*, No. SAG–13–3774, 2014 WL 5381852, at *3 (D.Md. Oct. 21, 2014) (holding that such a factor should not be considered "unless a particular record contains evidence of actual bias")).  It is unclear how the ALJ could conclude that Dr. Thaler was moved by sympathy and bias, yet his opinion is consistent with the only other opinion offered by a medical source who actually examined Plaintiff in regard to his

physical impairments -- *i.e.*, Dr. Min, Plaintiff's treating pain management specialist.  *See* PageID 767-73.

Based upon all of the foregoing, the undersigned finds that the ALJ's rejection of Dr. Thaler's opinion is unsupported by substantial evidence.

### 2.    Dr. Min

Dr. Min treated Plaintiff beginning on November 16, 2012.  PageID 761.  In March 2013, Dr. Min opined that Plaintiff could sit for 1 hour per workday; stand/walk for 2 hours per workday; occasionally lift up to 10 pounds; occasionally carry up to 5 pounds.  PageID 767-73. Dr. Min also found that Plaintiff would require to take 30-40 minute breaks "often," and would miss more than 3 days of work per month because of his impairments.  *Id*.  The ALJ gave Dr. Min's opinion "no weight" because "no clinical findings have been offered in support of these otherwise conclusory assertion functional restrictions."  PageID 47.  The ALJ also noted a purported inconsistency in Dr. Min assessment insofar as he found "[Plaintiff] has been non-responsive to interventional pain management treatments but also . . . able to function with daily activities due to his medication."  PageID 47.

Insofar as the ALJ found that Dr. Min offered no clinical findings to support his opinion, such reason is unsupported by the record.  In fact, in his assessment report, Dr. Min specifically noted clinical findings such as: limited range of motion at L5/S1; tenderness in the lumbar spine with extension and rotation; muscle weakness in the lumbar spine; positive straight leg test; and pain with range of motion in all planes.  PageID 767-68.  Dr. Min also pointed to Plaintiff's December 2011 MRI as support underlying his opinion concerning Plaintiff's functional limitations.  PageID 769.  As a result, the ALJ's finding in this regard is deemed unsupported by substantial evidence.

13

Further, the ALJ's finding of inconsistency in Dr. Min's statements is also unsupported by the record. In his impairment questionnaire, Dr. Min notes specifically that Plaintiff experienced no relief from epidural injections, *i.e.*, an interventional pain management treatment.[9] PageID 771. However, Plaintiff does take Oxycodone that "allows him to function with daily activities." PageID 769. The undersigned fails to see the inconsistency in these two statements -- epidural injections did not block the pain, yet pain medication assists Plaintiff in carrying out his daily activities. Even assuming, *arguendo*, such an inconsistency exists, the undersigned fails to see how it wholly undermines Dr. Min's disabling opinion.

Based on the foregoing, the undersigned concludes that the ALJ's rejection of Dr. Min's opinion is unsupported by substantial evidence.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17

_____

[9] "Interventional pain management involves special procedures to treat and manage pain[,]" such as "an injection of an anesthetic medicine or steroid around nerves, tendons, joints or muscles; spinal cord stimulation; insertion of a drug delivery system; or a procedure with radio-frequency ablation or cryoablation to stop a nerve from working for a long period of time." *See* Interventional Pain Management - Cedars-Sinai, https://www.cedars-sinai.edu/Patients/Programs-and-Services/Pain-Center/Treatments/Interventional-Pain-Management.aspx (last visited July 28, 2016).

14

F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Here, proof of disability is overwhelming and remand would result in the presentation of cumulative evidence and serve no purpose other than delay.  Treaters Thaler and Min both gave consistent disabling opinions based upon their longitudinal treatment of Plaintiff, imaging studies, and clinical findings documented throughout the record.  Opinions to the contrary -- such as those of the record reviewers who did not analyze a complete treatment record -- cannot overcome the controlling weight the treaters' opinions deserve.  *See Gayheart*, 710 F.3d at 377 (holding that conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors" because "[o]therwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion").  Accordingly, this case must be remanded for an immediate award of benefits.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1.    The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2.    This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for an immediate award of benefits; and

3.    This case be **CLOSED**.

Date:  August 2, 2016                              */s/ Michael J. Newman*
                                                    Michael J. Newman
                                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).